IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FRONTIER COMMUNICATIONS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) ) | C.A. No. 10-545 (GMS) |
| v. | ) ) | |
| GOOGLE INC., | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF FRONTIER COMMUNICATIONS CORPORATION'S
ANSWERING BRIEF IN OPPOSITION TO GOOGLE'S MOTION
TO STAY PENDING REEXAMINATION OF THE PATENT-IN-SUIT**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mgraham@mnat.com
  *Attorneys for Plaintiff*
  *Frontier Communications Corporation*

OF COUNSEL:

Samuel J. Najim
Mark V. Campagna
Olivia E. Marbutt
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA  30309-3053
(404) 521-3939

December 2, 2010

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

BACKGROUND ......................................................................................................................... 1

SUMMARY OF ARGUMENT .................................................................................................... 3

LEGAL STANDARD ................................................................................................................... 5

ARGUMENT ............................................................................................................................... 5

     I.     STAYING THE CASE WOULD BE HIGHLY PREJUDICIAL TO
           FRONTIER BECAUSE OF THE UNDUE PREJUDICE OF
           PERMITTING FRONTIER'S COMPETITOR TO CONTINUE TO
           INFRINGE THE '468 PATENT AND THE LENGTH OF TIME
           REEXAMINATION WILL TAKE. ...................................................................... 5

           A.     The Timing Of The Request For *Ex Parte* Reexamination Weighs
                  Against Granting A Stay. ........................................................................ 6

           B.     The Length Of Time For Reexamination Proceedings Weighs
                  Against Granting A Stay. ........................................................................ 7

           C.     The Relationship Of The Parties Weighs Against Granting A Stay. .......... 9

     II.    ONLY THE STATUS OF LITIGATION COULD WEIGH IN FAVOR
           OF GRANTING A STAY; BUT HERE, A STAY WILL NOT
           CONSERVE RESOURCES. ............................................................................ 11

     III.   A STAY WILL NOT SIGNIFICANTLY SIMPLIFY THE ISSUES IN
           QUESTION FOR TRIAL, AND IS THEREFORE INAPPROPRIATE. ............. 12

CONCLUSION .......................................................................................................................... 16

# TABLE OF AUTHORITIES

CASES                                                                                          PAGE

*Abbott Diabetes Care, Inc. v. Dexcom, Inc.*,
    Civil Action No. 05-590 GMS, 2006 U.S. Dist. LEXIS 57469 (D. Del. Aug. 16,
    2006) ..................................................................................................................15

*ARGOS v. Orthotec LLC*,
    304 F. Supp. 2d 591 (D. Del. 2004)....................................................................5

*Ariba v. Emptoris*,
    Civ. No. 07-CV-90, 2007 WL 3132606 (E.D. Tex. Oct. 23, 2007) .......................14

*Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co.*,
    Civil Action No. 06-187 GMS, 2009 U.S. Dist. LEXIS 85156 (D. Del. Sept. 16,
    2009) ..................................................................................................................10

*BarTex Research, LLC v. Fedex Corp.*,
    611 F. Supp 2d 647 (E.D. Tex. 2009) ..............................................................8, 9

*Belden Techs. Inc. v. Superior Essex Commc'ns LP*,
    Civ. No. 08-63, 2010 Dist. LEXIS 90960 (D. Del. Sept. 2, 2010) ...................6, 7, 8

*Biax Corp. v. Fujitsu Computer Sys. Corp.*,
    Civil Action No. 2:06-CV-364, 2007 U.S. Dist. LEXIS 12973 (E.D. Tex. Feb. 26,
    2007) ..............................................................................................................8, 9, 11

*Canady v. Erbe Elektromedizin GmbH*,
    307 F. Supp. 2d 64 (D.D.C. 2004)......................................................................13

*In re Columbia Univ. Patent Litig.*,
    330 F. Supp. 2d 12 (D. Mass. 2004) ..................................................................11

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.*,
    734 F. Supp. 656 (D. Del. 1990).........................................................................6

*Freeman v. Minn. Mining & Mfg. Co.*,
    661 F. Supp. 886 (D. Del. 1987).........................................................................13

*Fusilamp, LLC v. Littelfuse, Inc.*,
    10-20528-CIV, 2010 WL 2277545 (S.D. Fla. June 7, 2010)................................8

*IXL Enters., Inc. v. Techsearch, LLC*,
    Case No. 1:00-cv-1701-RLV (N.D. Ga. Dec. 8, 2000) ........................................13

*Landis v. North American Co.*,
    299 U.S. 248 (1936).............................................................................................4

*Life Techs. Corp. v. Illumina, Inc.*,
    Civil Action No. 09-706-RK, 2010 U.S. Dist. LEXIS 55623 (D. Del. June 7, 2010)..............9

*Nidec Corp. v. LG Innotek, Co.*,
    Civil Action No. 6:07cv108, 2009 U.S. Dist LEXIS 46123 (E.D. Tex. Apr. 3, 2009) ..........10

*NTP, Inc. v. Research In Motion, Ltd.*,
    397 F. Supp. 2d 785 (E.D. Va. 2005) .....................................................................................5

*O2 Micro Int'l Ltd. v. Beyond Innovation*,
    Civil Action No. 2-04-CV-32 (TJW), 2008 U.S. Dist. LEXIS 87352 (E.D. Tex. Oct.
    29, 2008) ..............................................................................................................................10

*Oracle Corp. v. Parallel Networks, LLP*,
    Civ. No. 06-414, 2010 U.S. Dist. LEXIS 93164 (D. Del. Sept. 8, 2010) ...................6, 7, 9, 15

*Patlex Corp. v. Mossinghoff*,
    758 F.2d 594 (Fed. Cir. 1985)..............................................................................................12

*In re Phoenix Licensing LLC Patent Litig.*,
    MDL Docket No. 08-1910-MHM, 2009 U.S. Dist. LEXIS 17525 (D. Ariz. Feb. 24,
    2009) ....................................................................................................................................14

*Textron Innovations Inc. v. The Toro Co.*,
    Civil Action No. 05-486 (GMS), 2007 U.S. Dist. LEXIS 100102 (D. Del. Apr. 25,
    2007) ....................................................................................................................................10

*Vehicle IP, LLC v. Wal-Mart Stores, Inc.*,
    Civ. No. 1 0-503-SLR, slip op. (D. Del. Nov. 22, 2010)...............................................6, 9, 15

*Viskase Corp. v. Am. Nat'l Can Co.*,
    261 F.3d 1316 (Fed. Cir. 2001)..............................................................................................5

*Wall Corp. v. Bonddesk Group, L.L.C.*,
    Civ. No. 07-844, 2009 U.S. Dist. LEXIS 20619 (D. Del. Feb. 24, 2009) .................7, 9, 11, 14

## STATUTES

35 U.S.C. § 301 ..........................................................................................................................1

35 U.S.C. § 317(c) ....................................................................................................................13

## OTHER AUTHORITIES

145 Cong. Rec. H11769 (Nov. 9, 1999) ...............................................................................12, 13

145 Cong. Rec. S13259 (Oct. 27, 1999) ....................................................................................13

## INTRODUCTION

There are many reasons to deny the motion of defendant Google Inc. ("Google") to stay litigation pending its *Ex Parte* Reexamination Request of Frontier's U.S. Patent No. 7,742,468 ("the '468 patent").  The most fundamental is the substantial prejudice plaintiff Frontier Communications Corporation ("Frontier") will incur from being denied injunctive and monetary relief while a competitor's infringement continues unabated for years as a reexamination winds its course.

Google's false appeal to judicial efficiency alone demonstrates that its motion is without merit.  Google raises the seductive argument that reexamination will either eliminate the case entirely or greatly simplify it.  But it is highly unlikely that reexamination will invalidate every claim of the '468 patent.  And, if a stay is granted, the Court will have to address all of the issues in the case when the case resumes after a reexamination of indeterminate length.  Those issues would include infringement, validity, and ***eight affirmative defenses and three counterclaims*** asserted by Google—***all*** of which cannot be decided by the PTO.[1]  All that a stay pending reexamination would guarantee is delay and prejudice to Frontier.

## BACKGROUND

Frontier operates a telecommunications network across 27 states, and is the largest provider of communications services focused on rural America.  Frontier, *Investor Relations:  Corporate Profile*, http://phx.corporate-ir.net/phoenix.zhtml?c=66508&p=irol-homeprofile (last visited Dec. 1, 2010) (Ex. A).  The services it provides include telephone and

---

[1]   The PTO can only determine the validity of a patent in reexamination over other patents and printed publications.  It cannot consider other validity issues such as prior invention.  *See* 35 U.S.C. § 301 (limiting citation of prior art in reexamination to "patents or printed publications"); Manual of Patent Examining Procedure (MPEP) § 2216 (8th ed., rev. 8/2010).

Internet, technical support services to residential customers, and advanced telecommunications services to businesses. *Id.* Following its conception of the invention disclosed in the '468 patent, Frontier developed, implemented and commercialized the Frontier1 service, which included the claimed features. For example, Frontier1 allowed for multiple phone lines to ring simultaneously, and for calls in progress to be transferred seamlessly from one phone line to another (*e.g.*, home phone to cell phone). Frontier Launches Frontier1 Wireless Companion, Entrepreneur (Apr. 1, 2007), http://www.entrepreneur.com/tradejournals/article/print/160693306.html (last visited Dec. 1, 2010) (Ex. B).

Based on technology created from in-house development and design, Frontier filed a patent application for Enhanced Telephone Services on February 9, 2007. A continuation of that application, which issued as the '468 patent, was filed on September 1, 2009. The '468 patent was filed as an accelerated application. As required by the PTO, Frontier submitted references in an accelerated examination document. The PTO approved of the search Frontier conducted in granting Frontier's petition for accelerated examination. Patent Application No. 12/552,170, Dec. 8, 2009 Office Communication (Ex. C). Just as with every patent application, the PTO examiner "conduct[ed] an independent search of the claimed subject matter and [made] an independent determination of whether the claims [were] patentable as filed." USTPO, Guidelines for Applicants under the New Accelerated Examination Procedure, at 6, www.uspto.gov/web/patents/accelerated/ae_guidelines_120607.doc (Ex. D). After the PTO completed its examination, the '468 patent issued on June 22, 2010.

Google has been on notice of Frontier's patent rights since at least May 26, 2009, when Google's patent application was rejected over an application related to the '468 patent.

Patent Application No. 11/785,659, Excerpt of May 26, 2009 Office Communication (Ex. E).

Frontier again notified Google in an October 16, 2009 letter, in which Frontier stated:

> We are aware of Google's development of its "Google Voice" product, which evolved from its acquisition of GrandCentral. As you are aware from the recent rejection of your patent application related to this product by the US Patent Office, Frontier's patent applications, and any patents issuing therefrom, will cover squarely your implementation of the Google Voice product. As such, Google will need a license to avoid violating Frontier's patents, when issued.

Oct. 16, 2009 Letter from H. Glassman to D. Drummond (Ex. F). Google completely ignored Frontier's offer of a license to the '468 patent. On December 23, 2009, Google's patent application was again rejected over a related Frontier patent application. Patent Application No. 11/785,659, Excerpt of Dec. 23, 2009 Office Communication (Ex. G). Google eventually abandoned its patent application. Patent Application No. 11/785,659, July 6, 2010 Notice of Abandonment (Ex. H); *see also* Patent Application No. 11/785,659, July 23, 2010 Decision on Petition (Ex. I).

## SUMMARY OF ARGUMENT

Frontier is entitled to its day in court, and has used this litigation as a last resort, after Frontier's attempts to license the '468 patent were rebuffed by Google. Moreover, by using Frontier's patent, Google has become Frontier's competitor. When forced to sue to enforce its patent, Frontier filed suit in this District because both Frontier and Google are Delaware corporations, and this forum is known for its patent experience and its ability to manage cases expeditiously. If Google truly believes it does not infringe or that the '468 patent is invalid or unenforceable, it can litigate all such issues in this Court. But Frontier submits that this Court should not allow Google to delay resolution of this matter for four to six years, while Google continues and broadens its infringement of the '468 patent. *See, e.g.*, Press Release, HTC,

Introducing the T-Mobile G2 with Google — the First Smartphone Delivering 4G Speeds on T-Mobile's Super-Fast HSPA+ Network (Sept. 9, 2010), *available at* http://www.htc.com/us/press/introducing-the-t-mobile-g2-with-google--the-first-smartphone-delivering-4g-speeds-on-t-mobiles-super-fast-hspa-network/19 (last visited Dec. 1, 2010) (noting that all G2 phones are sold pre-installed with Google Voice, the application that Frontier accuses of infringement) (Ex. J).

If a stay is granted, Frontier will suffer undue prejudice from being denied the opportunity to enjoin a competitor for four to six years.  Google fails to demonstrate that it will suffer any "hardship or inequity in being required to go forward."  *Landis v. North American Co.*, 299 U.S. 248, 255 (1936).  The benefit of staying the case pending resolution of any reexamination is speculative at best.  Relying upon the PTO's statistics, Google asserts that 75% of third-party initiated *ex parte* reexaminations result in *some* patent claims either being cancelled or amended.  *See* D.I. 15, Google Inc.'s Opening Br. in Supp. of its Mot. to Stay This Litigation Pending Reexamination of the Patent-in-Suit, at 3 ("Google Br."); USPTO, Ex Parte Reexamination Filing Data – September 30, 2010, at 2 (Ex. K).  But the PTO statistics actually demonstrate that there is only a 13% chance that *all* of the claims will be cancelled during the reexamination.  USPTO, Ex Parte Reexamination Filing Data – September 30, 2010, at 2 (Ex. K).  It is simply not correct that this reexamination would likely simplify and streamline issues for trial.  This case is already narrow:  a single patent, a single independent claim, and a single accused product.  Unless reexamination results in the unlikely outcome that all of the claims are cancelled, there will be many issues remaining for trial, including infringement and Google's eight affirmative defenses and counterclaims.

Finally, Google raises and argues numerous allegations related to alleged inequitable conduct and the timing of the disclosure of prior art to the PTO.  *See* D.I. 15, Google Br. at 2.  While those allegations are unfounded, in any event, they are simply an attempt to obscure the issues related to the stay as the PTO cannot address inequitable conduct during reexamination.

## LEGAL STANDARD

A district court is by no means required to stay a federal court case because of a request for reexamination.  *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001); *see also NTP, Inc. v. Research In Motion, Ltd.*, 397 F. Supp. 2d 785, 787 (E.D. Va. 2005) (noting that "a court is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze").  The District Court for the District of Delaware has traditionally been guided by three general factors in ruling on motions to stay:  "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set."  *ARGOS v. Orthotec LLC*, 304 F. Supp. 2d 591, 598 (D. Del. 2004) (Robinson, J.) (internal quotation omitted).  These factors do not support staying this case and Google's motion should be denied.

## ARGUMENT

**I.    STAYING THE CASE WOULD BE HIGHLY PREJUDICIAL TO FRONTIER BECAUSE OF THE UNDUE PREJUDICE OF PERMITTING FRONTIER'S COMPETITOR TO CONTINUE TO INFRINGE THE '468 PATENT AND THE LENGTH OF TIME REEXAMINATION WILL TAKE.**

Courts in this District recently have used the following sub-factors in analyzing whether a stay would prejudice the non-moving party:  (a) the timing of the request for

reexamination and the request for stay, (b) the status of reexamination proceedings, and (c) the

relationships of the parties. *Oracle Corp. v. Parallel Networks, LLP*, Civ. No. 06-414, 2010 U.S.

Dist. LEXIS 93164, at *6-11 (D. Del. Sept. 8, 2010) (Robinson, J.); *Belden Techs. Inc. v.

Superior Essex Commc'ns LP*, Civ. No. 08-63, 2010 Dist. LEXIS 90960, at *7-8 (D. Del.

Sept. 2, 2010) (Robinson, J.); *see also Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656,

658 (D. Del. 1990) (Farnan, J.).  The relationship of the parties being direct competitors, the

length of time a reexamination will take, and the fact that the reexamination will likely not result

in cancellation of all claims weigh heavily against granting a stay.

   A.    **The Timing Of The Request For *Ex Parte* Reexamination Weighs
          Against Granting A Stay.**

        Google filed its request for reexamination nearly five months after Frontier

brought suit, and immediately moved to stay the case.  The timing of the request for

reexamination, and the fact that Google has sought an *ex parte* reexamination, weigh against

staying the case.[2]  Although Google has sought to have the '468 patent reexamined, the status of

that request remains just that, a request.  Even if it is granted, any reexamination is likely to take

four to six years to complete.  *See* Section C *infra*.

        By filing its reexamination request after it was sued, Google seeks to use the

reexamination process to obtain a tactical advantage.  *Cf. Vehicle IP, LLC v. Wal-Mart Stores,

Inc.*, Civ. No. 1 0-503-SLR, slip op. at 3-4 (D. Del. Nov. 22, 2010) (Robinson, J.) (finding that a

non-party's reexamination request, as opposed to a party to the litigation, weighed in favor of a

stay).  Moreover, Google has requested *ex parte* reexamination.  Thus, Google "will [not] be

estopped from making the same invalidity arguments that it makes to the PTO during the

---

[2]    Frontier concedes that Google timely moved to stay the case after it filed a request for
       reexamination, and that this could weigh in favor of staying the case.

reexamination proceeding (or any invalidity arguments that it could have made to the PTO),"[3]

Google can re-argue invalidity defenses lost in the *ex parte* reexamination later in this litigation

if (as is likely) the PTO determines at least one of the claims to be valid and patentable.  *See*

USPTO, Ex Parte Reexamination Filing Data – September 30, 2010, at 2 (Ex. K) (noting that

there is a 87% chance that some or all claims will emerge from reexamination).  Accordingly,

this factor weighs against a stay.

**B.     The Length Of Time For Reexamination Proceedings Weighs Against
         Granting A Stay.**

Courts have two primary concerns regarding reexamination proceedings:  (1) a

"strategy of delay" on the part of either party, *Oracle*, 2010 U.S. Dist. LEXIS 93164, at *9; and

(2) the overall "arduous [reexamination] process fraught with the potential for multiple appeals."

*Belden*, 2010 U.S. Dist. LEXIS 90960, at *9.

Regarding a strategy of delay, courts first focus on reexamination delays

effectuated by either party.  *Oracle*, 2010 U.S. Dist. LEXIS 93164, at *9.  Frontier has done

nothing to delay these proceedings.  Frontier sought an accelerated examination to obtain a

patent expeditiously.  Frontier was diligent in its attempts to reach a resolution regarding

Google's infringement.  Google completely ignored Frontier's overtures, and forced Frontier into

litigation in order to be heard.  Now, Google seeks to essentially ignore Frontier again, and put

this case on ice by requesting a reexamination that will take years to conclude and that will only

address one of eight issues in the counterclaims.  Granting a stay at the onset of litigation due to

an *ex parte* reexamination request would only support Google's strategy of delay.

---

[3]   *Wall Corp. v. Bonddesk Group, L.L.C.*, Civ. No. 07-844, 2009 U.S. Dist. LEXIS 20619, at
      *3-4 (D. Del. Feb. 24, 2009) (Sleet, J.).

Reexamination proceedings take four to six years.  The average pendency of a reexamination is more than two years from the time of the filing date to the issuance of the certificate.  *See* USPTO, *Ex Parte* Reexamination Filing Data – September 30, 2010, at 2 (Ex. K).  This statistic, however, includes only the first step in a multi-step process.  The Board of Patent Appeals could rescind the Examiner's final rejection and require the Examiner to further address validity arguments.  Frontier could appeal any adverse ruling of the Board of Patent Appeals to the Federal Circuit.  The Federal Circuit could remand the case back to the PTO for further review.  The Board of Patent Appeals could send the case back to the Examiner for further examination.  This process may be repeated after the examiner's next rejection, if any. The appellate process is estimated to take at least an additional twenty-four months.  *See Fusilamp, LLC v. Littelfuse, Inc.*, 10-20528-CIV, 2010 WL 2277545, at *5 (S.D. Fla. June 7, 2010) (denying stay in part because "the reexamination process takes on average 25.4 months to complete, and another 24 months on average for appeals"); *Biax Corp. v. Fujitsu Computer Sys. Corp.*, Civil Action No. 2:06-CV-364, 2007 U.S. Dist. LEXIS 12973, at *4 (E.D. Tex. Feb. 26, 2007) (denying stay where plaintiff would "be prejudiced because *ex parte* reexaminations take an average of 22.6 months to complete and the appellate process for review could take an additional 24 months").  Therefore, a complete reexamination and appeal is estimated to take between four and six years.  *See Belden*, 2010 U.S. Dist. LEXIS 90960, at *9-10 (noting the time for a reexamination, including appeal by the adversely affected party, is 4.7 years); *BarTex Research, LLC v. Fedex Corp.*, 611 F. Supp 2d 647, 651 (E.D. Tex. 2009) (estimating that the entire process for a reexamination and appeal would require 78.4 months, or 6.5 years).

Moreover, the current statistics regarding the duration of reexamination do not account for the more than 20% increase in the number of reexaminations between 2009 and 2010

to date.  The increase in the number of reexaminations suggests that reexaminations will take

even longer going forward.  See USPTO, Ex Parte Reexamination Filing Data – September 30,

2010, at 1 (Ex. K).  Moreover, the statistics do not provide any indication as to the likely

duration of a stay due to the potential for serial reexamination requests.  *See* Section III *infra*.

            Granting a stay would severely limit Frontier's ability to obtain an injunction and

allow a competitor to continue infringing Frontier's patent for years (in violation of Frontier's

right to exclude).  Judge Michel, former Chief Judge of the Federal Circuit, has questioned the

value of a stay, stating:  "Can we really get a faster, better, and cheaper review of challenged

patents at the PTO than in the courts?  Experience with the existing PTO reexamination

procedures raises doubts."  Judge Paul R. Michel, Address before the Federal Trade Commission

Hearing on the Evolving IP Marketplace (Dec. 5, 2008) (transcript available at

http://pub.bna.com/ptcj/FTCMichel1205.pdf).  Therefore, this sub-factor weighs against a stay.

*See Wall Corp.*, 2009 U.S. Dist. LEXIS 20619, at *3 (this Court stating that "[g]iven the delay in

[] PTO proceedings, the court finds that the first factor weighs slightly against granting a stay);

*BarTex*, 611 F. Supp 2d at 651 (stating that the plaintiff "would be unduly prejudiced if the Court

were to grant a stay.  A stay could potentially prevent [the plaintiff] from enforcing its rights for

6.5 years."); *see also Biax Corp.*, 2007 U.S. Dist. LEXIS 12979, at *5 ("the potential delay for

an indefinite period would likely prejudice [the plaintiff]").

    **C.**    **The Relationship Of The Parties Weighs Against Granting A Stay.**

            The relationship of the parties as competitors weighs heavily against granting a

stay.  "Courts have been generally reluctant to stay proceedings where the parties are direct

competitors."  *Oracle*, 2010 U.S. Dist. LEXIS 93164, at *11; *Vehicle IP*, slip op. at 5; *Life Techs.*

*Corp. v. Illumina, Inc.*, Civil Action No. 09-706-RK, 2010 U.S. Dist. LEXIS 55623 (D. Del.

June 7, 2010) (Kelly, J.) (denying a motion to stay in a case of direct competitors because of the prejudice and collecting cases regarding the same).

As a result of Google's entry into the telecommunications marketpace, there can be no dispute that Frontier and Google are competitors.  Frontier developed and implemented a service called Frontier1 that included the '468 patent's features.  Frontier, *Investor Relations: Corporate Profile*, http://phx.corporate-ir.net/phoenix.zhtml?c=66508&p=irol-homeprofile.  This service was launched in March 2007 and offered to or used by customers through 2009.  While Frontier is not currently marketing Frontier1 or another product under the '468 patent, Frontier certainly may in the future (although it would be difficult to compete against Google Voice because it is currently offered as a free service).  Regardless, Frontier is a practicing entity and a stay would unduly prejudice its rights to enforce its patent.  *See Auto. Techs. Int'l, Inc. v. Am. Honda Motor Co.*, Civil Action No. 06-187 GMS, 2009 U.S. Dist. LEXIS 85156, at *7 (D. Del. Sept. 16, 2009) (Sleet, J.) (this Court finding that the fact that a party "does not make or sell ***any*** product" weighed against lifting a stay of litigation pending reexamination (emphasis added)).  Courts have found undue prejudice to plaintiffs where "the parties [were] direct competitors in the market" and a stay would result in a "denial of timely enforcement of the plaintiff's patent rights."  *See O2 Micro Int'l Ltd. v. Beyond Innovation*, Civil Action No. 2-04-CV-32 (TJW), 2008 U.S. Dist. LEXIS 87352, at *7 (E.D. Tex. Oct. 29, 2008); *see also Nidec Corp. v. LG Innotek, Co.*, Civil Action No. 6:07cv108, 2009 U.S. Dist LEXIS 46123, at *11-12 (E.D. Tex. Apr. 3, 2009) (finding that when the "[p]laintiff may have the chance to secure a permanent injunction" that weighs against granting a stay); *cf. Textron Innovations Inc. v. The Toro Co.*, Civil Action No. 05-486 (GMS), 2007 U.S. Dist. LEXIS 100102, at *9 (D. Del. Apr. 25, 2007) (Sleet, J.) (finding that a stay would not be "***unduly*** prejudice[ial]" where the parties were not

competitors).  Unlike prior cases in which this Court has granted stays because the opposing

party could not identify a specific and undue harm,[4] Frontier would be unduly prejudiced by a

stay of this nascent litigation pending a speculative *ex parte* reexamination request **by a**

**competitor**.  This factor weighs heavily against granting a stay.

## II.      ONLY THE STATUS OF LITIGATION COULD WEIGH IN FAVOR OF GRANTING A STAY; BUT HERE, A STAY WILL NOT CONSERVE RESOURCES.

In this case, Frontier acknowledges that the litigation has just commenced, so this

factor, as a general matter, could weigh in favor of a stay.  However, courts have denied stays in

similar cases.  *See Biax Corp.*, 2007 U.S. Dist. LEXIS 12973, at *4 (denying stay before

scheduling conference or discovery where plaintiff would "be prejudiced because *ex parte*

reexaminations take an average of 22.6 months to complete and the appellate process for review

could take an additional 24 months"); *In re Columbia Univ. Patent Litig.*, 330 F. Supp. 2d 12, 17

(D. Mass. 2004) (stay denied four months after litigation was consolidated and remarking that

case will proceed "significantly faster" in court on a motion for summary judgment or by trial

than by reexamination even with the PTO's special priority treatment).

Only 13% of all reexaminations instituted by third parties result in the

invalidation of all claims.  *See* USPTO, *Ex Parte* Reexamination Filing Data – September 30,

2010, at 2 (Ex. K).  Thus, 87% of all reexaminations by third parties result in at least one claim

being upheld.  Thus, that statistic alone suggests that there is much that the parties can and

should accomplish during the pendency of the reexamination that will not require the Court's

active involvement.  For example, at a minimum, discovery on infringement and damages can

---

[4]    *See Wall Corp.*, 2009 U.S. Dist. LEXIS 20619, at *4 (finding that "the delay that might enure in the reexamination process . . . does not, **by itself**, amount to undue prejudice (emphasis added)).

proceed immediately because the reexamination will likely have little to no bearing on the scope of or need for such discovery. But this is particularly true here because, unlike many cases, this is not a case in which there are multiple accused products that may be affected by claim construction. Frontier accuses a single product, Google Voice, of infringement. *See* D.I. 1, Compl. ¶ 13.

### III.     A STAY WILL NOT SIGNIFICANTLY SIMPLIFY THE ISSUES IN QUESTION FOR TRIAL, AND IS THEREFORE INAPPROPRIATE.

Staying this case during any reexamination proceedings will not simplify the issues for trial because (1) Google has requested an *ex parte* reexamination to avoid being estopped from making the same invalidity arguments and Google can re-argue any argument it loses in this Court, and (2) only one of Google's eight defenses can even be addressed by the PTO.

Google explicitly chose not to file an *inter partes* reexamination which would have prohibited Google from making the same invalidity arguments raised in reexamination during the litigation. While the bill enacting the *ex parte* reexamination process was originally enacted to "settle validity disputes more quickly" and "refer patent validity questions to the expertise of the Patent Office," *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 602 (Fed. Cir. 1985), a number of concerns made the proceeding capable of being abused and ineffective in reducing court litigation. Chief among these concerns was that third party reexamination requesters can institute serial reexaminations to indefinitely extend the reexamination process by submitting various prior art references in a piecemeal fashion. *See* Conf. Rep. on HR 1554, 145 Cong. Rec. H11769, H11804 (Nov. 9, 1999).

Granting stays due to reexamination as a matter of course invites defendants to game the system in exactly this manner. For example, a Northern District of Georgia case was

- 12 -

stayed for nearly nine years during three separate reexaminations based on three separate requests. *IXL Enters., Inc. v. Techsearch, LLC*, Case No. 1:00-cv-1701-RLV (N.D. Ga. Dec. 8, 2000) (case was stayed for nearly nine years for three separate reexaminations based on three separate requests); *see also Canady v. Erbe Elektromedizin GmbH*, 307 F. Supp. 2d 64, 67-68 (D.D.C. 2004) (showing that second and even third reexamination requests based upon additional prior art may be filed and those additional reexamination requests may even overlap an ongoing reexamination). Moreover, the statistics for the average duration of a reexamination do not reflect this sort of practice, and, therefore, may significantly underestimate the duration of any stay.

Congress enacted the Optional *Inter Partes* Reexamination Act to combat these sorts of abuses and to "make reexamination a viable, less-costly alternative to patent litigation by giving third-party requesters the option of inter-partes reexamination procedures" and "afford[ing] an expanded, although still limited, role in the reexamination process." 145 Cong. Rec. S13259 (Oct. 27, 1999) (statement of Sen. Hatch). The catch, however, is that the *inter partes* reexamination statute creates a cross-estoppel preventing parallel resolution of validity issues by courts and the Patent Office. *See* 35 U.S.C. § 317(c) (if the third party requester looses in the inter partes reexamination it is precluded from a defense of invalidity in court). These provisions were put in place "to guard against harassment of a patent holder." Conf. Rep. on HR 1554, 145 Cong. Rec. H11769, H11805 (Nov. 9, 1999); *see also Freeman v. Minn. Mining & Mfg. Co.*, 661 F. Supp. 886, 888 (D. Del. 1987) (Wright, J.) ("Parties should not be permitted to abuse the [reexamination] process.").

This is the exact "harassment" Google is attempting to exact here. Because Google "will [not] be estopped from making the same invalidity arguments," any alleged

- 13 -

invalidity issues resolved by the PTO will not simplify this litigation because Google will be free

to raise the same issues.  *See Wall Corp.* 2009 U.S. Dist. LEXIS 20619, at *3-4 (this Court

finding that litigation would be streamlined because defendant would be estopped from making

the same arguments in court that it made to the PTO during *inter partes* reexamination).

   Contrary to Google's assertion, PTO statistics actually show that when, as here,

an *ex parte* reexamination petition is filed by a third party, it is more than twice as likely that the

claims will all be confirmed (25%) than cancelled (13%).  *See* USPTO, *Ex Parte* Reexamination

Filing Data – September 30, 2010, at 2 (Ex. K).  Google's assertion that a stay will simplify

issues and streamline the case is complete speculation.  Nor does the possibility that one or more

of the claims could be amended in reexamination warrant a stay.  Merely because there is a

chance that the claims will be amended, "does not necessitate staying the action; otherwise every

action that involved reexamination would warrant a stay."  *In re Phoenix Licensing LLC Patent

Litig.*, MDL Docket No. 08-1910-MHM, 2009 U.S. Dist. LEXIS 17525, at *10-11 (D. Ariz.

Feb. 24, 2009).

   Notwithstanding Google's argument that the patent claims will likely be

materially changed or invalidated, it is highly probable that some claims and issues will remain

after the reexamination.  Accordingly, waiting for the completion of the reexamination will not

simplify this litigation.  A reexamination, if granted, would address a single defense:  whether

the claims are invalid over the particular prior art references cited in the reexamination request.

*See Ariba v. Emptoris*, Civ. No. 07-CV-90, 2007 WL 3132606, at *2 (E.D. Tex. Oct. 23, 2007)

(noting that the PTO does not consider all forms of defenses of invalidity or unenforceability

during reexamination).  And even that defense could be relitigated here because Google has

requested an *ex parte* reexamination.  In addition, Google has asserted eight separate affirmative

defenses and three counterclaims, including contentions that the '468 patent is invalid under 101, 102, 103, and 112; and that Frontier committed inequitable conduct. *See* D.I. 9, Google Inc.'s Answer, Affirmative Defenses, Counterclaims, and Demand for Jury Trial, at 3-18.  In contrast, the only ground Google has raised in its reexamination request is obviousness under Section 103.[5]  "Thus, the issues for trial do not completely overlap those that will be resolved upon reexamination." *Vehicle IP*, slip op. at 3.  Moreover, "an allegation of inequitable conduct . . . strengthen[s] the disfavor of a stay." *Id.* (citing *Oracle*, 2010 U.S. Dist. LEXIS 93164, at *2).

Finally, while Frontier recognizes that this Court has been inclined in the past to grant stays of litigation because reexamination would simplify the issues, this case is not nearly as complex as those cases.  This case involves two parties, a single patent with a single independent claim, and a single accused product. *Abbott Diabetes Care, Inc. v. Dexcom, Inc.*, Civil Action No. 05-590 GMS, 2006 U.S. Dist. LEXIS 57469, at *19 (D. Del. Aug. 16, 2006) (finding that "a stay w[ould] simplify the issues and focus the litigation" for a case involving four patents, all of which were in reexamination by "narrowing [] the variety of complex issues relating to the numerous claims at issue, which, if clearly defined, would streamline the discovery process and the remainder of the litigation).  Reexamination is not going to narrow the focus of this already narrow case.

Since trial would still be necessary after any reexamination, and Google will not be estopped from making the same invalidity arguments a second time around, all that a stay would guarantee is prejudice Frontier by allowing a competitor's infringement to go unabated for years without greatly simplifying the issues in this case.

---

[5]   Notably, Google's request for reexamination does not present any question that the '468 patent is invalid because it is anticipated by a single prior art reference.

## <u>CONCLUSION</u>

Google should not be allowed to continue to infringe Frontier's patent while it brings this case to a halt, particularly since Google had early notice of its infringement and continued to market its product.  Granting Google's motion would give it a clear tactical advantage by allowing it to test the waters of its invalidity defense through its *ex parte* re-examination before it urges such a defense on this Court.  Moreover, since it is highly unlikely that a re-examination would be fully dispositive, a stay would not significantly advance the progress of this dispute.  This Court should deny Google's motion and allow Frontier's case to proceed.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*

Mary B. Graham (#2256)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mgraham@mnat.com
*Attorneys for Plaintiff*
*Frontier Communications Corporation*

OF COUNSEL:

Samuel J. Najim
Mark V. Campagna
Olivia E. Marbutt
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA  30309-3053
(404) 521-3939

December 2, 2010
3916221

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on December 2, 2010, the foregoing was caused to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered participants.

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on December 2, 2010 upon the following individuals in the manner indicated:

<u>BY E-MAIL</u>

Frederick L. Cottrell, III
Anne Shea Gaza
RICHARDS, LAYTON & FINGER
One Rodney Square
920 N. King Street
Wilmington, DE  19801

**cottrell@rlf.com**
**gaza@rlf.com**

<u>BY E-MAIL</u>

TROUTMAN SANDERS LLP

Douglas D. Salyers
**douglas.salyers@troutmansanders.com**

Jeffrey C. Morgan
**jeffrey.morgan@troutmansanders.com**

Trenton A. Ward
**trenton.ward@troutmansanders.com**

*/s/ Mary B. Graham*
_____

Mary B. Graham (#2256)