# IN THE UNITED STATES DISTRICT COURT
# FOR DISTRICT OF DELAWARE

| | |
|---|---|
| FRONTIER COMMUNICATIONS CORPORATION, | ) ) ) |
|        Plaintiff / Counterclaim Defendant, | ) ) ) ) |
|        v. | ) ) ) |
| GOOGLE INC., | ) ) |
|        Defendant / Counterclaim Plaintiff. | ) ) ) |

C. A. No. 10-545-GMS

## GOOGLE INC.'S REPLY BRIEF
## IN SUPPORT OF ITS MOTION TO STAY THIS LITIGATION
## PENDING REEXAMINATION OF THE PATENT-IN-SUIT

Douglas D. Salyers
Jeffrey C. Morgan
Trenton A. Ward
TROUTMAN SANDERS LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308
Tel.: (404) 885-3000
douglas.salyers@troutmansanders.com
jeffrey.morgan@troutmansanders.com
trenton.ward@troutmansanders.com

Frederick L. Cottrell, III (#2555)
Anne Shea Gaza (#4093)
RICHARDS, LAYTON & FINGER
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Tel.: (302) 651-7700
cottrell@rlf.com
gaza@rlf.com

Attorneys for Defendant /
Counterclaim Plaintiff
*GOOGLE INC.*

RLF1 3696748v. 1

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .................................................................................................................. 1

ARGUMENT.......................................................................................................................... 2

        A.     Frontier Will Not Be Unduly Prejudiced or Tactically Disadvantaged by a Stay.......................................................................... 2

              1.     Frontier Does Not Offer a "Competing" Product or Service ......... 2

              2.     Google Has Not Unfairly Sought Any Tactical Advantage........... 3

              3.     Frontier is Not Prejudiced by Any "Delay," And In Fact, Is in Control of the Speed of the Reexamination.............................. 5

              4.     In Fact, Frontier is Actually Advantaged by Ex Parte Reexamination .............................................................................. 6

        B.     A Stay Will Simplify the Issues in this Litigation and Conserve Valuable Resources.................................................................................. 7

        C.     The Early Stage of the Litigation Strongly Weighs in Favor of a Stay ........................................................................................................... 8

        D.     The Complexity of This Litigation Weighs in Favor of a Stay ................. 9

CONCLUSION..................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006) ................................................................................................................. 3

*Research in Motion Ltd. v. Visto Corp.*,
   545 F. Supp. 2d 1011 (N.D. Cal. 2008) ................................................................................... 5

*In re Swanson*,
   540 F.3d 1368 (Fed. Cir. 2008) ................................................................................................ 4

*Tablemax IP Holdings, Inc. v. Shuffle Master, Inc.*,
   No. 2:09-cv-1519-RLH-PAL, 2010 U.S. Dist. LEXIS 127287 (D. Nev. Nov.
   16, 2010) .............................................................................................................................. 5, 6

*Textron Innovations, Inc. v. Toro Co.*,
   No. 05-486-GMS, 2007 U.S. Dist. LEXIS 100102 (D. Del. Apr. 25, 2007) ........................... 3

*Wall Corp. v. BondDesk Group LLC*,
   No. 07-844-GMS, 2009 U.S. Dist. LEXIS 20619 (D. Del. Feb. 24, 2009) ............................. 5

**STATUTES**

35 U.S.C. §307 .............................................................................................................................. 6

**OTHER AUTHORITIES**

35 C.F.R. § 1.550(g) ..................................................................................................................... 6

# INTRODUCTION

Google's Motion to Stay should be granted. Frontier will not be prejudiced by a stay, and the reexamination proceedings will simplify the issues in this litigation. Although Frontier argues that it will suffer substantial harm from a stay, it offers no evidence to support that assertion. Indeed, Frontier admits that it has not offered any allegedly competing product to Google's accused Google Voice service at least since 2009. Frontier's brief in opposition is replete with unsupported assertions, but stripped of its hyperbole, several facts are clear.

First, Frontier concedes that it has not offered an allegedly competing product for at least a year, and is noncommittal whether it will offer any competing product in the future. (*See* D.I. 17, Frontier Br., at 10). Thus, Frontier would not be unduly prejudiced by a stay. Frontier's remedy is limited to the collection of a reasonable royalty if any infringement is ultimately found (which is unlikely). As a result, monetary damages can make Frontier whole regardless of the length of a stay.

Second, Frontier's assertion that the reexamination will take "four to six years" to conclude is misleading, and, taken at face value, is an admission that its patent is fundamentally flawed. The reexamination will end in very short order unless the United States Patent and Trademark Office ("USPTO") determines that the newly introduced prior art raises a substantial new question of patentability. Even then, the only way for the reexamination to span "four to six years" is if the '468 Patent is so indefensible that it is rejected by the Patent Examiner, then rejected by the USPTO's Board of Patent Appeals and Interferences, and then those decisions are subsequently reviewed by the Federal Circuit. If the survival of Frontier's '468 Patent is in such doubt and will require such lengthy multi-level review—as Frontier seems to indicate—there

will be substantial judicial economy from waiting to see how the reexamination process turns out before starting this litigation.

Third, the USPTO is currently conducting the initial review of Google's *ex parte* reexamination request, whereas this litigation has not yet progressed beyond the pleading stage. In 75% of *ex parte* reexaminations, the claims of a patent are either cancelled or modified. (*See* D.I. 15, Google's Opening Br., Ex. 2 (USPTO *Ex Parte* Reexamination Filing Data, dated September 30, 2010) (hereinafter, "USPTO *Ex Parte* Data"). Because the claims of the '468 Patent will necessarily control the outcome of every issue in this litigation (infringement, validity, enforceability and damages), if a stay is not granted it is very likely that substantial resources will be expended by the Court and both parties while the reexamination is ongoing, and additional resources will be unnecessarily required to address any changes to the '468 Patent's claims that are made during the reexamination.

In sum, as discussed in Google's Opening Brief, and for the reasons discussed below, all the factors considered under this Court's case law weigh strongly in favor of a stay. Google's Motion to Stay should be granted.

## ARGUMENT

**A.    Frontier Will Not Be Unduly Prejudiced or Tactically Disadvantaged by a Stay.**

    **1.    Frontier Does Not Offer a "Competing" Product or Service**

Although Frontier repeatedly contends that it will suffer "competitive" harm, Frontier admits that it has not offered any product that allegedly incorporates the features of the '468 Patent (or purportedly competes with the accused Google Voice service) since at least 2009. (Frontier Br., at 10). Indeed, the "Frontier1" service that Frontier contends allegedly

2

incorporated the '468 patent's features appears to have not had a "conference call" feature at all, let alone a "conference call" feature like the one claimed in the '468 Patent. (*See* Frontier Br., Ex. B, which says nothing about a "conference call" feature in the "Frontier1" service). Thus, Frontier is not (and perhaps has never been) a "practicing entity" with respect to the '468 Patent, and apparently Frontier has no plans to offer a competing product in the future. (*See* Frontier Br., at 10) Indeed, it is telling that no Frontier representative has provided a declaration or any admissible evidence of any competitive harm caused by Google Voice. Thus, Frontier is not entitled to the injunctive relief it claims to seek, as it cannot show the required "irreparable harm" based on market share loss, customer defections, *etc*. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Accordingly, Frontier would not be harmed by a stay. *See Textron Innovations, Inc. v. Toro Co.*, No. 05-486-GMS, 2007 U.S. Dist. LEXIS 100102, at *9 (D. Del. Apr. 25, 2007) (no undue prejudice where patent owner "does not compete with [accused infringer] for sales.") Absent a competing product, injunctive relief would not be appropriate. Frontier's only remedy (if it ultimately prevails) is a reasonable royalty for past damages. Indeed, Frontier's single pre-suit letter simply demanded that Google purchase a license and never referenced any purported competing product —an admission that monetary damages will make Frontier whole. (*See* Frontier's Opp'n Br., at Ex. F). A stay will not impact Frontier's ability to seek monetary relief.

### 2. Google Has Not Unfairly Sought Any Tactical Advantage

Despite Frontier's baseless allegations in its Opposition Brief, there were not multiple "overtures," to Google, nor did Google "force" Frontier into litigation. (Frontier Br., at 7). Frontier sent Google a single letter demanding a license to "patent applications" that *had not yet*

3

*even completed prosecution*. Indeed, Frontier's October 16, 2009 demand letter was sent more than *six months before* the USPTO had even stated it would allow any of the '468 Patent's claims. (*Compare* Frontier Br., Ex. F (10/16/2009 Letter from Frontier to Google) *with* Exhibit 1 attached hereto (4/28/2010 USPTO Notice of Allowance)). In other words, Frontier sent its demand letter at a time before Frontier had any patent rights to license at all. Accordingly, there was nothing for Google to assess because the asserted '468 Patent did not even exist at the time.

Additionally, Frontier filed its lawsuit the *same day* the '468 Patent issued, giving Google no time to evaluate the issued claims, let alone discuss the possibility of a resolution outside litigation. If any party unfairly sought a tactical advantage it was Frontier, which brought suit before giving Google a chance to review the issued claims of the '468 Patent. It is clearly Frontier—not Google—that "forced" this litigation.

For its part, Google filed its reexamination request within four and a half months after the issuance of the '468 Patent and after being sued. This amount of time was reasonable and necessary to perform the required invalidity analysis of the '468 Patent and then prepare the reexamination papers. This is not a case where reexamination was a purely tactical choice employed late in litigation. *See In re Swanson*, 540 F.3d 1368, 1374 (Fed. Cir. 2008) (first seeking reexamination after trial and appeal). Here, because of the invalidity of the patent, the extremely early stage of the litigation, and the maximum opportunity to conserve the resources of the Court and the parties, initiating a reexamination proceeding was the most appropriate course of action. Indeed, reexamination is in the best interest of all parties involved, so that before engaging in expensive litigation the USPTO can review, as an initial matter, whether the newly introduced prior art invalidates the '468 Patent.

### 3. Frontier is Not Prejudiced by Any "Delay," And In Fact, Is in Control of the Speed of the Reexamination

The law is clear that the delay caused by the reexamination process itself does not constitute "undue prejudice." If it did, no stay would ever be granted. *See, e.g.*, *Wall Corp. v. BondDesk Group LLC*, No. 07-844-GMS, 2009 U.S. Dist. LEXIS 20619, at *4-5 (D. Del. Feb. 24, 2009) (citing *Research in Motion Ltd. v. Visto Corp.*, 545 F. Supp. 2d 1011, 1012 (N.D. Cal. 2008) (granting stay where delay was sole prejudice identified)).

Moreover, because this is an *ex parte* reexamination, Frontier, not Google, controls how quickly the reexamination will proceed. For example, Frontier is in control of the speed with which its responses to USPTO Office Actions are filed. *Tablemax IP Holdings, Inc. v. Shuffle Master, Inc.*, No. 2:09-cv-1519-RLH-PAL, 2010 U.S. Dist. LEXIS 127287, at *3 (D. Nev. Nov. 16, 2010) (granting stay; "[T]his is an *ex parte* application by Defendant, which means that the Defendant is not permitted to have any further input. The deadlines are all in the control of the Plaintiffs. They are not required to take the maximum time to file the necessary documents or appeals. Any undue delay in the reexamination will not be caused by Defendants."). If it wants to press the reexamination to a speedy conclusion, Frontier need not take the full amount of time allowed for responses. Frontier can prosecute this reexamination in much less than the 25.5 month average time for *ex parte* reexaminations if it wants to, and can only blame itself for any undue delay. (*See* Google's Opening Br., at Ex. 2 (USPTO *Ex Parte* Data)).

In exaggerated fashion, Frontier contends that, despite the 25.5 month average time for *ex parte* reexaminations, the *ex parte* reexamination of its patent will take "four to six years." (Frontier Br., at 8). Frontier incorrectly contends that the 25.5 month average pendency for *ex parte* reexaminations "includes only the first step in a multi-step process" and does not include

5

any time for appeal. (*Id.*) Frontier is incorrect. The 25.5 month average pendency *includes all time for appeals*—even appeals to the Federal Circuit. (*Compare* Google's Opening Br., Ex. 2 (USPTO *Ex Parte* Data) (stating that average 25.5 month pendency is from "Filing date to certificate issue date") *with* 35 U.S.C. §307 (reexamination certificate issues only after "the time for appeal has expired or any appeal proceeding has terminated"). As a result, Frontier's attempt to "tack on" an additional four years to the average 25.5 month pendency of reexaminations is misleading.

But further, the reexamination will take "four to six years" in this case *only* if the '468 Patent has significant validity problems—*i.e.*, if the USPTO Examiner finds the '468 Patent to be invalid, and the USPTO Board of Patent Appeals and Interferences likewise agrees that the patent is invalid (thus requiring review by the Federal Circuit). Indeed, if the asserted '468 Patent is so bereft of merit that it will take "four to six years" to litigate its validity through multiple appeals, then a stay of litigation is all the more warranted. This Court and Google should not have to expend their valuable time and resources in litigation over a patent with such dubious validity.

    4.    **In Fact, Frontier is Actually Advantaged by *Ex Parte* Reexamination**

Frontier complains that it is disadvantaged because the reexamination is *ex parte*. Quite the contrary: because the reexamination is *ex parte*, Frontier is the only entity permitted to participate. 35 C.F.R. § 1.550(g); MPEP § 2254; *see Tablemax*, 2010 U.S. Dist. LEXIS 127287, at *3. If anyone has a "tactical advantage" in *ex parte* reexamination, it is Frontier.

Additionally, *ex parte* reexaminations conclude more quickly than *inter partes* reexaminations. Specifically, according to USPTO statistics, *inter partes* reexaminations take,

on average, nearly a full year longer to conclude: 36.1 months compared to 25.5 months for *ex parte* reexaminations.  (*Compare* Google's Opening Br., Ex. 2 (USPTO *Ex Parte* Data) *with* Exhibit 2, attached hereto (USPTO *Inter Partes* Reexamination Filing Data, dated September 30, 2010)).

**B.     A Stay Will Simplify the Issues in this Litigation and Conserve Valuable Resources**

Frontier relies on the untenable argument that a stay is not warranted because invalidity is not the only defense or counterclaim that Google has asserted.  (For example, Google has counterclaimed that the '468 Patent is unenforceable due to Frontier's inequitable conduct).  Frontier's argument makes no sense.  This case is solely about the '468 Patent.  Every litigation issue—infringement, validity, enforceability, and damages—is predicated on the claims of a patent that has a 75% chance of having different (or no) claims after the reexamination.  At its most basic level, if the USPTO declares the '468 Patent invalid, then the litigation is over and Google's other defenses and counterclaims will not be reached.  The USPTO's views on the validity of the only patent-in-suit and any claim changes Frontier may be forced to make to preserve validity, will affect the future of all claims and defenses in this litigation.

Frontier further makes the unsupported argument that unless all of the claims in the '468 Patent are declared invalid, a stay is not warranted.  (*See* Frontier Br., at 4, 11-12).  That is simply not the law.  The issue is not whether a stay will resolve all issues in the litigation (although a USPTO finding that all of the claims of the '468 Patent are invalid would end this case).  The issue is whether a stay will "simplify" the issues in the litigation.  It will.  In fact, Frontier does not (and cannot) dispute the multitude of benefits from staying this litigation (raised in Google's Opening Brief), including:

7

- ➢ Claims in Third-Party Requester reexaminations (like this one) are either amended or cancelled 75% of the time.  (USTPO *Ex Parte* Data).

- ➢ The reexamination will create new intrinsic evidence, in the form of new prosecution history, which must be taken into account in this litigation and any claim construction.

- ➢ Not staying this litigation will likely result in multiple *Markman* proceedings, undermining the benefits of engaging in early claim construction.

- ➢ If any of Frontier's claims are amended, Google may have "intervening rights," which will have a direct impact on the amount and time-frame of any alleged damages and the proper scope of discovery.

Frontier's only attempt to address any of these benefits is to manufacture an argument that at least one claim survives reexamination 87% of the time.  Frontier bases this argument on a statistical sleight-of-hand that "all claims [are] cancelled" 13% of the time.  (*See* Frontier Br., at 11).  But Frontier ignores the fact that in the situations where not *all* claims are cancelled, certain claims still may be cancelled or amended, which would affect the scope of the litigation.  Indeed, what the statistics actually show is that "claim changes" occur 62% of the time and that "all claims [are] cancelled" 13% of the time.  Thus, 75% of the time, a court will have new or amended claims to contend with (or no claims at all) after reexamination has concluded.

## C.     The Early Stage of the Litigation Strongly Weighs in Favor of a Stay.

Discovery has not yet begun, and no trial date has been set.  The Court has not yet issued its Notice of Scheduling Conference in this case.  The parties have not yet had their Rule 26(f) conference.  No initial disclosures have been exchanged, no documents have been exchanged and no depositions have occurred.  Frontier concedes that the early stage of this litigation weighs in favor of a stay.

**D.      The Complexity of This Litigation Weighs in Favor of a Stay.**

Unable to find any legal or factual basis for opposing a stay of litigation, and unable to distinguish the governing case law, Frontier finally resorts to an immaterial and inaccurate plea that "this case is not nearly as complex" as other patent cases that were stayed by this Court. But all patent cases present substantial complexity—including this one.  For example, Frontier neglects to mention that the '468 Patent's "single" independent claim has over one dozen recited elements, and the dependent claims add even more.  To prove infringement, Frontier will have to prove that Google Voice practices each and every element of each asserted claim—a complex analysis.  Moreover, as Frontier admits in its brief, the prosecution history of the '468 Patent is complex.  Further, Frontier has already noted that Google has asserted "eight affirmative defenses and three counterclaims" (Frontier Br., at 1) that, if litigated, will only further increase the complexity of this case.

The parties and the Court should not be put to unnecessary burden and expense of tackling these complex issues now, given that the pending reexamination is likely to simplify or obviate many of the issues raised in the pleadings.

## CONCLUSION

For all the foregoing reasons, and the reasons originally set forth in Google's Opening Brief, the interest of justice and judicial economy would be best served if this litigation was stayed pending the outcome of the pending reexamination of the '468 Patent. Google respectfully requests that the Court grant its Motion to Stay.

|  |  |
|---|---|
| OF COUNSEL:<br><br>Douglas D. Salyers<br>Jeffrey C. Morgan<br>Trenton A. Ward<br>Troutman Sanders LLP<br>5200 Bank of America Plaza<br>600 Peachtree Street, N.E.<br>Atlanta, Georgia 30308<br>Tel.: (404) 885-3000<br>douglas.salyers@troutmansanders.com<br>jeffrey.morgan@troutmansanders.com<br>trenton.ward@troutmansanders.com | */s/ Anne Shea Gaza*<br>Frederick L. Cottrell, III (#2555)<br>Anne Shea Gaza (#4093)<br>Richards, Layton & Finger<br>One Rodney Square<br>920 N. King Street<br>Wilmington, Delaware 19801<br>Tel.: (302) 651-7700<br>cottrell@rlf.com<br>gaza@rlf.com<br><br>Attorneys for Defendant /<br>Counterclaim Plaintiff<br>*GOOGLE INC.* |

Dated: December 13, 2010

**CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2010, I caused to be served by electronic mail and hand delivery copies of the foregoing document and electronically filed the same with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Mary B. Graham, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347
mgraham@mnat.com

I further certify that on December 13, 2010, I caused to be served by electronic mail copies of the foregoing document upon the following counsel of record:

Samuel J. Najim, Esquire
Mark V. Campagna, Esquire
Olivia E. Marbutt, Esquire
Jones Day
1420 Peachtree Street, N.E., Suite 800
Atlanta, GA 30309-3053
snajim@jonesday.com
mcampagna@jonesday.com
oemarbutt@jonesday.com

*/s/ Anne Shea Gaza*
Anne Shea Gaza (#4093)
gaza@rlf.com

11